```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

| | |
|---|---|
| RAPHAEL K. CHIEKE,           : | |
|       Plaintiff              | |
|                              : | |
|                              : | |
|       vs.                    : | CIVIL NO. 1:CV-06-1294 |
|                              : | |
| PENNSYLVANIA DEPARTMENT      | |
| OF WELFARE, MICHAEL STAUFFER,: | |
| JOHN BUNGO, BEATRICE HARRISON,| |
| and JOHN BAUSCH,             : | |
|       Defendants             | |

*M E M O R A N D U M*

*I.    Introduction*

On June 29, 2006, Plaintiff Raphael K. Chieke filed this action concerning a promotion to a position at the Pennsylvania Department of Welfare ("PDW"). Chieke's complaint sets forth claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e et seq., 42 U.S.C. § 1981, as well as state-law civil conspiracy and unlawful interference with contractual relations claims. (doc. 1).[1] Chieke alleges that Defendant Michael Stauffer, a former PDW Deputy Secretary of Administration, discriminated against him on account of his race, sex and national origin, in his decision not to hire plaintiff for the open management

---

[1] In Chieke's brief in opposition to Defendants' motion for summary judgment, he also references a Fourteenth Amendment claim under 42 U.S.C. § 1983. (doc. 33, pp. 5-6, 6 n.1). Chieke may not, however, present a new claim through a brief in opposition to a motion for summary judgment. *Bakare v. Pinnacle Health Hospitals, Inc.*, 469 F. Supp. 2d 272, 294 n.46 (M.D. Pa. 2006).

position.[2]  On October 9, 2007, Defendants filed a motion for summary judgment which is now ripe for consideration.  (doc. 24).  Upon careful review of the briefs and the record, we will grant the motion and enter judgment in favor of Stauffer and PDW and against Chieke.

*II.   Background*

Chieke is an African-American male of Nigerian origin.  Defendants' Statement of Material Facts ("SMF"), ¶ 1; (doc. 34, ex. 1, p. 50).  Since June 1989, Chieke has served as the Director of the Equal Employment Opportunity office for the Pennsylvania Department of Corrections.  *Id*. ¶ 5; Plaintiff's Counterstatement of Material Facts ("CMF") ¶ 5.  Chieke's position is the equivalent of an Equal Employment Opportunity Manager ("EEO Manager") II in the Department of Corrections.  Plaintiff's CMF ¶ 1.  Stauffer is a white male who, prior to his retirement on June 29, 2007, was PDW's Deputy Secretary of Administration.  Defendants' SMF ¶¶ 2, 3; (doc. 25, ex. 5, p. 5).[3]

In March 2004, PDW posted an opening for an EEO Manager III position.  Defendants' SMF ¶ 6.  Several African-

---

[2] Chieke also named John Bungo, Beatrice Harrison, and John Bausch, all PDW employees, as Defendants.  Bungo, Harrison, and Bausch were dismissed pursuant to a stipulation between the parties on November 2, 2007.  (doc. 31).

[3] PDW is an agency of the Commonwealth of Pennsylvania.  *Id*. ¶ 4.

American women and at least one African-American man have previously held the EEO Manager III position at PDW. Defendants' SMF ¶ 30. The individual hired to the position would report directly to Stauffer. Plaintiff's CMF ¶ 6. Six "relatively equal, appointable candidates" responded to the advertisement for the position. *Id*. PDW, however, reposted the opening for the position, expanding the class of eligible employees to include those holding an Equal Opportunity Specialist 3 position. Defendants' SMF ¶ 7. PDW reposted the opening in order to ensure that Mary Bell, the acting EEO Manager III at PDW, had an opportunity to apply for permanent status in her position. *Id*. ¶ 8.

PDW's hiring process for the EEO Manager III is governed by the Civil Services Act. *Id*. ¶ 9. The hiring protocol includes an interview process, to which PDW gives great emphasis in making the hiring decision. *Id*. ¶ 10. Chieke participated in the hiring process by completing a Civil Service application, anticipating an interview for the position. *Id*. ¶ 11. Chieke also took a Civil Service exam, viewing the exam as an opportunity to receive an interview for the position as well as a potential promotion. *Id*. ¶¶ 11-13; Plaintiff's CMF ¶ 13. According to Chieke, the exam, which was not in existence previously and was made up very quickly for the EEO Manager III position, required candidates to write their answers and then defend them before "oral board members." Plaintiff's CMF ¶ 12.

Chieke scored a ninety-four on the exam, the third highest score behind two individuals who were awarded points due to veteran's preference. Defendants' SMF ¶¶ 14, 15. Mary Bell, the acting PDW EEO Manager III, scored lower than Chieke and four others. *Id*. ¶ 16.

PDW interviewed eleven candidates for the position. Defendants' SMF ¶ 20. This included candidates who had completed the exam, such as Chieke, and at least one candidate, Mary Grace Majors, who had not taken the exam. Plaintiff's CMF ¶ 17. According to Stauffer, candidates who were not already part of the state system had to take the exam to be eligible for consideration. (doc. 34, ex. 5, p. 67). Mary Grace Majors, who was ultimately hired, did not take the exam but was eligible for an interview because she was a member of "the next lower class" of state employees identified in the job posting. *Id*. at 69. In this two-step interview process, at least three interviewers served on each panel. Defendants' SMF ¶ 18. Stauffer did not participate in Chieke's interview. *Id*. ¶ 19. During the interviews, panelists asked questions of the candidates and independently scored each candidate. *Id*. ¶¶ 21, 22. Jim Kroh and Mary Grace Majors received scores of 403 points and 389 points, significantly higher than the other candidates. *Id*. ¶ 23. Mary Bell, the acting EEO Manager III scored significantly lower with a score of 326. *Id*. ¶ 24. Chieke, who received a

315, also scored significantly lower than Kroh and Majors and somewhat lower than Mary Bell.  *Id*. ¶ 25.

After the first round of interviews, Stauffer decided that Mary Grace Majors, an African-American female, and Jim Kroh would move to a second round of interviews.  *Id*. ¶ 26; Plaintiff's CMF ¶ 26.  In the second round, Majors received a score of 129, and Kroh received a 55.  Defendants' SMF ¶ 27.  Majors was hired to fill the position.  *Id*. ¶ 28.  Stauffer informed Chieke by letter that he was not selected for the position.  *Id*. ¶ 29.

*III.  Discussion*

    *A.  Standard of Review*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, we may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986).  In reviewing the evidence, we must construe facts and inferences in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 553 (1986).  Summary judgment must be entered for the

5

moving party "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Id*.

The moving party bears the initial responsibility of stating the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553, 91 L.Ed.2d at 274. It can discharge that burden by "showing . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554, 91 L.Ed.2d at 275.

An issue is "genuine" "only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211-12 (1986)). A fact is "material" when it would affect the outcome of the trial under the governing law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211.

When a moving party has carried the burden under Rule 56, the burden shifts to the nonmoving party to demonstrate that an issue of material fact exists. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356, 89 L.Ed.2d at 552 (citations omitted). The nonmoving party "must present affirmative evidence in order to defeat a

properly supported motion for summary judgment," and cannot "simply reassert factually unsupported allegations contained in [the] pleadings." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (citation omitted). "If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50, 106 S.Ct. at 2511, 91 L.Ed.2d at 212 (citations omitted). Factual averments in briefs do not satisfy the nonmoving party's burden. *Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir. 1992).

*B. Chieke's Title VII Race and Sex Claims*

According to Chieke, Stauffer and PDW discriminated against him by refusing to promote him to the EEO Manager III position because of his race, sex, and national origin. (doc. 33, p. 5). Stauffer and PDW respond that Chieke did not receive the promotion because his interview scores showed that he was not qualified for the job. *See* doc. 23, pp. 9-10.

To evaluate Chieke's race and sex discrimination claims, we look to the burden-shifting scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[4] In a failure to promote case, the plaintiff must show: (1) membership in a protected class, (2)

---

[4] Chieke also makes a claim under 42 U.S.C. § 1981. As the legal analysis for Title VII and § 1981 claims is identical, *McKenna v. Pacific Rail Serv.*, 32 F.3d 820, 825 n.3 (3d Cir. 1994), our analysis and conclusion for Chieke's Title VII claim is the same as his § 1981 claim.

7

that he was qualified for the position to which he applied, and (3) that another person, not in the protected class, received more favorable treatment. *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006). If the plaintiff sets forth a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the decision not to promote the plaintiff. *Id*. The defendant can satisfy this "relatively light burden" "by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (citing *St. Mary's Honor Ctr. v. Hick*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). If the defendant satisfies this burden, the plaintiff must then show that the articulated explanation is a pretext for discrimination. *Id*. At this stage, a plaintiff faces a "difficult burden." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005). At summary judgment, the plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764.

The parties do not dispute that Chieke is a member of protected classes. The parties also do not dispute that Chieke applied for the promotion to EEO Manager III and did not receive the position. As to the second prong required for a prima facie case, Defendants appear to contend that Chieke was not qualified because he did not score well enough in his interview to warrant further consideration for the promotion. *See* doc. 23, pp. 9-10. However, a dispute regarding qualifications is sufficient to satisfy a plaintiff's prima facie obligation if the plaintiff shows that he was sufficiently qualified to be included in a group from which a discretionary selection would be made. *Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 523 (3d Cir. 1992). Instead, a dispute about subjective qualifications--here, the interviewers' evaluations of Chieke's performance in the interview--is typically considered in the second and third stages of a *McDonnell Douglas* analysis. *Id*. The record shows that Chieke applied for the position and received the third highest score on the civil service examination prior to his interview. Therefore, Chieke was sufficiently qualified to be among the candidates interviewed for the promotion from which a selection would be made.

Chieke's sex and race discrimination claims fail, however, in the third prong of the prima facie case. Chieke does not create an inference of discrimination based on sex or race because there is no evidence that in determining who

received the promotion, other, similarly situated individuals outside of his protected class received more favorable treatment.  While an inference of discrimination may be permissible based on a single instance of more favorable treatment for a member of a non-protected group, *Simpson v. Kay Jewelers*, 142 F.3d 639, 646 (3d Cir. 1998), Chieke's race and sex discrimination claims do not meet this threshold.  Both Jim Kroh, a male, and Mary Grace Majors, an African-American, received second round interviews with Majors eventually receiving the promotion.  Majors and Kroh were not outside of Chieke's protected race and sex classes.  Lacking such evidence, Chieke fails to create an inference that Stauffer's decision not to offer him a second-round interview and the promotion was motivated by sex or race discrimination.  Having failed to create a prima facie case of discrimination, we will grant Defendants' motion for summary judgment for these claims.

*C. Chieke's Title VII National Origin Claim*

In considering the national origin discrimination claim, we employ the same burden-shifting analysis discussed *supra*.  While we find that Chieke has satisfied the elements to make a prima facie case of national origin discrimination, he has not produced sufficient evidence of pretext.

The parties do not dispute that Chieke, who is of Nigerian national origin, is a member of a protected class.  As discussed, Chieke applied for the position and he was

sufficiently qualified for consideration.  Chieke has set forth a prima facie case because he has shown that individuals outside of his protected class received more favorable treatment.  That is, both Kroh and Majors, who are not Nigerian, were selected for second round interviews and Majors received the job.

The burden of production next shifts to Defendants to articulate a legitimate, nondiscriminatory reason for the decision not to promote Chieke.  Defendants have satisfied their light burden by explaining that "[t]he reason for [Chieke's] rejection in this case was that [he] did not fair as well in the interview process - the key to the hiring process - as others did."  (doc. 23, p. 10).  Stauffer noted the disparity between Chieke's interview score and the scores received by Kroh and Majors.  *Id*. at 4-5.  When asked why he selected Kroh and Majors, Stauffer explained:

> [T]here was a seemingly significant difference between where people placed in the interview process, and when you looked at Mr. Kroh and Ms. Majors, to me they far surpassed everybody else on the list, in that Ms. Majors, who was in second place after the initial interview, was . . . 63 points higher than Mary Bell, and everybody else kinda fell into that same 60 or 70 or 80 below, the decision was made to go with just the two top point scorers.

(doc. 34, ex. 5, pp. 48-49).  Stauffer's explanation, taken as true, permits the conclusion that there was a nondiscriminatory reason supporting the decision not to offer Chieke a second round interview and, later, the promotion.

11

The burden of production then returns to Chieke, "who must now show by a preponderance of the evidence that the employer's explanation is pretextual (thus meeting the plaintiff's burden of persuasion)." *Fuentes*, 32 F.3d at 763. As explained, a plaintiff may show pretext by discrediting the employer's explanation or submitting evidence to allow the conclusion that a discriminatory reason was more likely than not a motivating or determinative factor in the hiring decision. *Id*. at 764. Chieke has advanced arguments under each method, which we discuss in turn.

Under the first method, the plaintiff may use direct or circumstantial evidence to "meaningfully throw into question, i.e., to cast substantial doubt upon" the employer's explanation. *Id*. at 765. In responding to a summary judgment motion, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence.'" *Id*. at 765 (quoting *Ezold*, 983 F.2d at 531).

Chieke responds to Stauffer's nondiscriminatory explanation by claiming that his interviewers did not give him a fair evaluation. Plaintiff's CMF ¶ 25. According to Chieke, his responses in the interview were "germane," and over the course of his eighteen-year career, he consistently received

12

outstanding performance reviews in other jobs. *Id.*; (doc. 33, p. 4). Neither argument casts doubt on Stauffer's explanation for selecting Kroh and Majors instead of Chieke for the second round of interviews.

We reject Chieke's claim that the contrast between eighteen years of "outstanding" performance evaluations in other jobs and his lower interview score for the EEO Manager III position, without more, shows Stauffer's discriminatory intent. *See Kautz*, 412 F.3d at 474, *citing Ezold*, 983 F.2d at 528 (explaining: "The attempt to use past positive performance reviews to show that more recent criticism was pretextual fails as a matter of law."). Favorable reviews in Chieke's prior jobs do not discredit Stauffer's explanation that Chieke did not perform well enough in the interview for the EEO Manager III position to merit a second round interview. *See Creely v. Genesis Health Ventures, Inc.*, 184 Fed. Appx. 197, 199-200 (3d Cir. 2006) (nonprecedential) (positive reviews from other, prior employers do not call into question employer's refusal to rehire plaintiff based on poor job performance).

Under the second method for showing pretext, the plaintiff may offer other evidence, either direct or circumstantial, from which a fact-finder could reasonably believe that discrimination was more likely than not the motivating or determinative cause of the employer's decision. *Fuentes*, 32 F.3d at 764. At this stage, "the factual inquiry

into the alleged discriminatory motives of the employer has risen to a new level of specificity." *Simpson*, 142 F.3d at 646. Evidence might include prior discrimination by the defendant against the plaintiff or others in protected classes, or the defendant's more favorable treatment of other, similarly situated people outside of the protected class. *Fuentes*, 32 F.3d at 765.

Chieke offers numerous arguments in support of his claim that Stauffer was actually motivated by a discriminatory intent against individuals of Nigerian origin when he made the hiring decision. After considering Chieke's arguments and the record, we conclude that a fact-finder could not reasonably find that Stauffer was motivated by such an intent.

First, Chieke claims that Stauffer reposted the job opening after seeing that he had applied for the position and was the most qualified candidate. (doc. 33, p. 9). According to Chieke, reposting the job allowed less qualified individuals to apply. *Id*. at 13. Defendants respond that the job was reposted to obtain a larger candidate pool and to allow the acting director, Mary Bell, to apply. (doc. 37, p. 3).

Chieke's claim, however, is not supported by the evidence. Chieke argues that Defendants acted with discriminatory intent because "[s]eeing that the Plaintiff was the most qualified individual, the defendants changed the advertisement to allow additional individuals to apply." (doc.

33, p. 9). Chieke, however, fails to offer any support for this claim. Additionally, he admits that Defendants reposted the job with the intention of allowing Mary Bell to apply for it. *Compare* Defendants' SMF ¶ 8, *with* Plaintiff's CMF ¶ 8. While Chieke adds that he was dissatisfied because the reposting was "done at the expense of those individuals who were already qualified," Plaintiff's CMF ¶ 8, there is no evidence that Stauffer was motivated by an intention to discriminate against him. Lacking such evidence, Plaintiff's subjective belief that he was the most qualified candidate for the position does not, on its own, show that reposting the position was motivated by Stauffer's discriminatory intent.

Chieke also focuses on Defendants' use of interviews to fill the position instead of the examination results. According to Chieke, the exam, which was not required in the initial job posting, required written answers to questions which candidates then had to defend before "oral board members." Plaintiff's CMF ¶ 12. Chieke received a ninety-four on the test, the third highest score. Defendant's SMF ¶ 14. Chieke claims that the test was "a sham" because contrary to the information in the job posting, the results were not used to fill the position. (doc. 33, p. 10).

We reject Chieke's contention that the use of interviews in addition to the Civil Service exam is evidence of discriminatory intent. First, despite claiming that "the [exam]

15

results would be used to fill the vacant position," *id.*, Chieke admits that "[t]he competitive hiring process includes an interview process, the results of which are given great emphasis in the hiring decision." Defendants' SMF ¶ 10.  Chieke also admits that he viewed the exam as an opportunity to receive an interview, not as the exclusive factor in awarding the promotion. *Id.* ¶ 13.  Second, Chieke received the third highest score on the exam and would not have received the position even if Defendants used the exam score as the sole basis for the hiring decision.[5]  In light of Chieke's failure to obtain the highest score, the interview requirement was not a detriment to him.  Additionally, it does not show discriminatory intent on the part of Stauffer.

Third, Chieke appears to argue that Defendants' decision to interview candidates who had not taken the exam creates an inference of discriminatory intent.  (doc. 33, p. 10).  Stauffer, however, explained that the exam was a way for candidates who were not part of the particular hiring system to become eligible for consideration.  (doc. 34, ex. 5, p. 67). Mary Grace Majors, who was ultimately hired to fill the position, did not take the exam but was eligible for an

---

[5] Chieke makes repeated reference to the fact that the two candidates who scored higher than he on the exam only did so due to an automatic ten points awarded to veterans seeking employment. *See, e.g.*, Plaintiff's CMF ¶ 15.  Aside from noting that he would have received the highest score had the two other individuals not received the veterans' bonus, Chieke does not argue that such a procedure is discriminatory or is otherwise part of his claim.

interview because she was a member of "the next lower class" of state employees identified in the job posting. *Id.* at 69. Thus, the pool of candidates to be interviewed included individuals who had taken the exam and those who were already eligible for an interview and did not have to take the exam. *See id.* at 34, 69. Chieke presents no evidence that the examination requirement was rooted in discriminatory animus rather than a desire to determine the eligible pool of candidates. Lacking any support in the record for Chieke's argument, we will not attribute a discriminatory motive to Defendants' use of an examination in filling the position.

Fourth, according to Chieke, Stauffer's treatment of other Nigerians shows that contrary to the nondiscriminatory reason articulated by Defendants, Stauffer was motivated by a discriminatory intent. Chieke claims that in dealing with two other "African-American born males," John Nwolkeji and Alex Rajas, "Stauffer hired other individuals who were less qualified for positions in which they had applied." (doc. 33, p. 14). Chieke also points to Stauffer's purported transfer of an unnamed "African-American born individual who was assigned to him to work for another department." *Id*. In response, Defendants contend that Chieke's allegations about Stauffer's prior conduct may not be used to show pretext. Defendants claim that the allegations, which come from Chieke's deposition, are "nothing but pure hearsay by the plaintiff about what he claims

17

others have told him in the past." (doc. 37, p. 6). Additionally, Defendants argue that Chieke's testimony about Stauffer's mistreatment of others may not be used to defeat summary judgment because the testimony would not be admissible at trial. *Id*.

As a general matter, we disagree with Defendants' argument that Chieke's testimony about Stauffer's mistreatment of others may not be used to show discriminatory intent in Chieke's case. The Third Circuit has explained: "Evidence of an employer's conduct towards other employees has long been held relevant and admissible to show that an employer's proffered justification is pretext." *Ansell v. Green Acres Contracting Co., Inc.*, 347 F.3d 515, 521 (3d Cir. 2003). While other acts may not be admissible if they are too remote or too dissimilar from the plaintiff's situation, *Stair v. Lehigh Valley Carpenters Local Union No. 600*, 813 F. Supp. 1116, 1119 (E.D. Pa. 1993), deposition testimony that other employees experienced discrimination is relevant to a showing of pretext. *Thompson v. Air Prod. and Chemicals, Inc.*, No. Civ. A. 95-6854, 1997 WL 66192, *1 (E.D. Pa. Feb. 10, 1997). Additionally, such evidence may be considered at summary judgment provided it is capable of being admissible at trial. *Id*. at *1 n.5. While Chieke's deposition testimony of other instances of discrimination by Stauffer may not be admissible in its current form, Chieke could conceivably produce the witnesses at trial.

18

While we may consider Chieke's deposition testimony, Chieke has failed to present circumstantial evidence sufficient to show discriminatory intent.  Without any other circumstantial evidence of discriminatory intent by Stauffer, the allegations of Stauffer's mistreatment of others, on their own, are insufficient to meet Chieke's burden of showing pretext by a preponderance of evidence.  Accordingly, we will grant Defendants' motion for summary judgment.

    *D.  Chieke's State-Law Claims*

Chieke also presents state-law claims for civil conspiracy and intentional interference with contractual relations.  (doc. 1, ¶¶ 47-54).  We will decline jurisdiction over these claims based on our dismissal of the federal claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); 28 U.S.C. § 1367(c)(3).

                                                     /s/William W. Caldwell
                                                     William W. Caldwell
                                                     United States District Judge

Date: March 10, 2008

```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

RAPHAEL K. CHIEKE,                    :
         Plaintiff
                                      :

                                      :
         vs.                              CIVIL NO. 1:CV-06-1294
                                      :
PENNSYLVANIA DEPARTMENT
OF WELFARE, MICHAEL STAUFFER,         :
JOHN BUNGO, BEATRICE HARRISON,
and JOHN BAUSCH,                      :
         Defendants


*ORDER AND JUDGMENT*

AND NOW, this 10th day of March, 2008, upon consideration of Defendants' motion for summary judgment (doc. 22), filed October 5, 2007, and after careful review of the record, it is ordered that:

   1. Defendants' motion for summary judgment is granted;

   2. Judgment is entered in favor of Defendants Michael Stauffer and Pennsylvania Department of Welfare;

   3. The Clerk of Court shall close this file.

                              /s/William W. Caldwell
                              William W. Caldwell
                              United States District Judge